# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

Donald Kinsman,

    Plaintiff

v.

NaphCare, Inc., et al.,

    Defendants

Case No.: 2:17-cv-152-JAD-NJK

**Order Granting Motion for Summary Judgment and Closing Case**

[ECF No. 29]

    Donald Kinsman sues NaphCare, Inc., Clark County Detention Center (CCDC), and the Las Vegas Metropolitan Police Department (Metro) for actions related to his medical care that he alleged occurred during his detention at CCDC. Kinsman alleges that the defendants are liable under state law for intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), negligence, and negligent hiring, supervision, training, and retention. In each claim for relief, Kinsman claims that the defendants' actions also violated 42 U.S.C. § 1983 "and the Fourth, Fifth, Eighth, and Fourteenth Amendments."

    Metro is the only remaining defendant.[1] It moves for summary judgment on all claims. Because Kinsman cannot show a genuine issue of material fact for any of his claims, I grant summary judgment in Metro's favor.

## Background

    On January 7, 2015, Kinsman fractured his right wrist in a car accident.[2] He was transported to the University Medical Center (UMC) for treatment.[3] Before Kinsman was discharged, someone at the hospital told him and the Metro officer accompanying him that Kinsman needed to see an orthopedic surgeon within 72 hours.[4] Kinsman was then arrested and

---

[1] *See* ECF Nos. 8 (dismissing CCDC), 15 (dismissing NaphCare).

[2] ECF No. 29-1 at 15–18.

[3] *Id.* at 17.

[4] *Id.* at 22.

1

brought to CCDC, where he told a nurse that he needed to see an orthopedic surgeon.[5] At the time, NaphCare was responsible for medical services at CCDC.[6] The next day, a nurse practicioner examined Kinsman's arm, determined that his wrist was fractured, and treated the pain with ibuprofen.[7] He also prescribed Robaxin for Kinsman's shoulder and neck pain.[8] That same day, a NaphCare employee faxed UMC to request Kinsman's records and discharge summary.[9]

Kinsman was examined by a physician's assistant (PA) for arm pain the next day. The PA continued Kinsman's medications and sent him the medical-observation unit. He noted that he needed the UMC records and planned a "likely future referral to ortho."[10] Three days later, UMC sent Kinsman's medical records, but did not include the discharge-summary report reflecting Kinsman's need to see an orthopedic surgeon.[11]

On January 21, 2015, Kinsman saw Dr. Mondora for a follow-up on his arm. Dr. Mondora prescribed Tylenol #3 for pain.[12] Later that day, a NaphCare employee faxed UMC again, asking for Kinsman's discharge summary.[13] Two days later, UMC sent the same medical records it had sent previously, again with no discharge summary.[14] Kinsman was released from CCDC on January 30, 2015.

---

[5] *Id.* at 25; 46–50.

[6] *See id.* at 53–116 (NaphCare contract).

[7] *Id.* at 45.

[8] *Id.* at 44.

[9] *Id.* at 35.

[10] *Id.* at 43.

[11] *Id.* at 34–40.

[12] *Id.* at 42.

[13] *Id.* at 33.

[14] *See id.* at 32.

In December 2016, Kinsman filed this complaint alleging that Metro, CCDC, and NaphCare are liable under state law and § 1983 for their failure to provide proper medical care during his few weeks at CCDC. By March 2017, the claims against NaphCare and CCDC were dismissed under Local Rule 7-2(d) because Kinsman failed to oppose their motions to dismiss. Last-standing defendant Metro now moves for summary judgment on the claims against it. Because Kinsman cannot show a genuine dispute of material fact on any of his claims, I grant judgment in Metro's favor.

## Discussion

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[1] When considering summary judgment, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[15] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[16]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[17] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; he "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in his favor.[18]

---

[1] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[15] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[16] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[18] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

**A.    Deliberate indifference**

A prisoner who claims inadequate medical care must show that prison officials were deliberately indifferent to his serious medical needs.[19]  A plaintiff can prevail on a deliberate-indifference claim if he can show that prison officials denied, delayed, or intentionally interfered with medical treatment and that the delay or interference caused further injury.[20]  Indifference to a prisoner's medical needs must be substantial; mere indifference, negligence, medical malpractice, or even gross negligence are insufficient to establish deliberate indifference.[21]  A mere difference of medical opinion likewise does not suffice.[22]  A prisoner must instead show that the course of treatment chosen was medically unacceptable under the circumstances and taken in conscious disregard to his health.[23]

There is no *respondeat superior* liability for § 1983 claims; a municipal entity is only liable if the plaintiff shows that the execution of a municipal policy caused the constitutional injury.[24]  To impose liability against a municipality for its failure to act, a plaintiff must show that: (1) a municipal employee violated the plaintiff's constitutional rights; (2) the municipality has customs or policies that amount to deliberate indifference; (3) these customs or policies caused the employee's violation of the plaintiff's constitutional rights.[25]

Kinsman does not name any individual defendants in this action.  He does not show that a Metro employee violated his constitutional rights.  There is no evidence that the doctors and nurses who treated Kinsman, or the Metro officer who accompanied him to UMC, were deliberately indifferent to his medical needs.  The record shows that Kinsman was evaluated and

---

[19] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

[20] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

[21] *Conn v. City of Reno*, 591 F.3d 1081–82 (9th Cir. 2009).

[22] *See Franklin v. State of Or., State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

[23] *See Toguchi v. Chung*, 291 F.3d 1051, 1058 (9th Cir. 2004).

[24] *Long v. Cty of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006).

[25] *Gibson v. Cty of Washoe*, 290 F.3d 1175, 1193–94 (9th Cir. 2002), *cert denied*, 537 U.S. 1106 (2003).

4

treated for his injuries multiple times during his brief incarceration. Any individual's alleged failure to refer Kinsman to an orthopedic surgeon, when they had no medical records indicating that such a referral was medically necessary, does not demonstrate deliberate indifference.

Kinsman alleges that Metro, as an entity, was deliberately indifferent to his serious medical needs. But the only way a municipal department can be held liable for deliberate indifference under § 1983 is if it had a custom, policy, or practice that caused the deprivation of Kinsman's rights. Kinsman presents absolutely no evidence that any such policy or custom exists. So, I grant summary judgment in Metro's favor on Kinsman's deliberate-indifference claim.

**B.     IIED and NIED**

Under Nevada law, the elements of a cause of action for IIED are "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress, and (3) actual or proximate causation."[26] Extreme and outrageous conduct is conduct "outside all possible bounds of decency and [that] is regarded as utterly intolerable in a civilized community."[27] To establish severe emotional distress, the plaintiff must present "objectively verifiable indicia of the severity of his emotional distress."[28] General physical or emotional discomfort is insufficient to demonstrate severe emotional distress.[29] NIED requires "either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotion distress' causing physical injury or illness. . . ."[30]

---

[26] *Dillard Dept. Stores v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999) (citing *Star v. Rabello*, 625 P.2d 90, 92 (Nev. 1981)).

[27] *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

[28] *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998).

[29] *Burns v. Meyer*, 175 F. Supp. 2d 1259, 1268 (D. Nev. 2001) (citing *Chowdhry v. NLVH Inc.*, 851 P.2d 459, 462 (Nev. 1993)).

[30] *Olivero v. Lowe*, 995 P.2 1023, 1025 (Nev. 2000) (quoting *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386–87 (Nev. 1998)).

5

Kinsman fails to present evidence to support any of these elements. There is no evidence that Metro engaged in extreme and outrageous conduct. After Kinsman was transported to CCDC, he was promptly evaluated by a nurse and in the next few days was examined by a physician's assistant and a doctor. While Kinsman told CCDC medical staff that he was directed to see an orthopedic surgeon, they were unable to confirm his account because UMC did not send them Kinsman's discharge summary.

Kinsman also cannot show that he suffered severe or extreme emotional distress. In a response to an interrogatory request asking him to identify the emotional damages he sustained from his experience, he responded that it is "frustrating" to have limited use of his wrist and the "pain and discomfort" he experiences "causes some depression."[31] He also states that while he was at CCDC, he was "constantly worried" that the delayed treatment of his wrist would cause permanent injury.[32] These expressions of discomfort and frustration are not sufficiently severe to support an IIED or NIED claim, and Kinsman presents no additional evidence to demonstrate the severity of his emotional distress.

Finally, Kinsman cannot show that Metro caused his emotional distress. NaphCare was responsible for providing medical care to inmates. There is no evidence to show that Metro was responsible for determining what type of follow-up care an inmate receives or that it had anything whatsoever to do with Kinsman's medical treatment. In short, nothing meaningfully ties Metro to Kinsman's care while at CCDC. So, I grant judgment in Metro's favor on Kinsman's IIED and NIED claims.

**C.    Negligence and negligent training**

"To prevail on a negligence theory, a plaintiff must generally show that: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages."[33] An employer "has

---

[31] ECF No. 29-2 at 108.

[32] *Id.*

[33] *Scialabba v. Brandise Const. Co.*, 921 P.2d 928, 930 (Nev. 1996).

a duty to use reasonable care in the training, supervision, and retention of his or her employees to make sure that the employees are fit for their positions."[34]

Kinsman doesn't present any evidence to show that Metro owed him a duty to provide specific medical care. Because I find that Kinsman lacks evidence to show that Metro was deliberately indifferent to a risk to his serious medical needs, Kinsman cannot show that Metro breached a constitutionally-imposed duty. Kinsman does not identify any other duty breached by Metro and on which he bases his negligence claim, other than stating—without support—that Metro "had a duty to render adequate medical care." Assuming that there is a separate duty under Nevada law, Kinsman does not provide any evidence to show that Metro breached it for the same reasons discussed above. The record is also devoid of any evidence to support Kinsman's claim of negligent hiring, training, and supervision. There is no evidence that Metro employees were involved in Kinsman's medical care, let alone that Metro negligently hired, trained, or supervised those employees. So, I grant summary judgment in Metro's favor on Kinsman's negligence and negligent-training claims.

**Conclusion**

Accordingly, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Las Vegas Metropolitan Police Department's motion for summary judgment **[ECF No. 29] is GRANTED.** The **Clerk of Court** is directed to **ENTER JUDGMENT in the defendants' favor and CLOSE THIS CASE.**

Dated: March 15, 2018

_____
U.S. District Judge Jennifer A. Dorsey

---

[34] *Hall v. SSF, Inc.*, 930 P.2d 94, 99 (Nev. 1996).